Mr. Andy Davis Arkansas Democrat-Gazette Capitol and Scott Post Office Box 2221 Little Rock, Arkansas 72203-2221
Dear Mr. Davis:
I am writing in response to your request, made pursuant to A.C.A. § 25-19-105(c)(3)(B), for an opinion on whether a state agency's denial of access to personnel and evaluation records is consistent with the Arkansas Freedom of Information Act ("FOIA"), codified at A.C.A. §§ 25-19-101 to -109 (Repl. 2002 and Supp. 2005). Specifically, you state that you requested records relating to the termination of the interim director of the Arkansas Fair Housing Commission. You have enclosed your FOIA request letter, which sought "any records related to the termination" of the director. You stated that the records should "include but not be limited to any employee evaluation or job performance records, notes, correspondence, e-mails and other material related to the termination." The Fair Housing Commission responded that it was "unable to grant your request as the Act specifically excludes this information from public inspection." The Commission's response then sets out the language of the FOIA regarding the exemptions for "personnel records" (which are exempt to the extent their release would constitute a "clearly unwarranted invasion of personal privacy"), and "employee evaluation or job performance records" (which are exempt unless and until the final administrative resolution of any suspension or termination proceeding where the records formed a basis for the suspension or termination and where there is a compelling public interest in disclosure). The particular basis or portion of these tests upon which the Commission relies to deny your request is not specified in the Commission's response. You state, however, that: "[t]here is a compelling public interest in the disclosure of the records because:
 The Fair Housing Commission is a new agency, created by the legislature in 2001 to investigate complaints of housing discrimination based on race, color, religion, sex, disability, family status and national origin. The commission has only had enforcement powers since 2003. Prior to that, complaints were investigated by the federal government. The public has an [sic] compelling interest in knowing whether the commission is upholding its duty and how taxpayer funds are begin spent.
 The commission's first director . . . was fired in March and has accused the commission of racial bias in its decision to fire him.
 [The interim director] was appointed . . . after [the first director's] firing. She was one of the founding members of the Fair Housing Commission before being hired as an investigator and then being appointed interim director.
 A former investigator with the commission . . . is suing the commission in federal court alleging racial discrimination."
You have therefore asked me to review the decision by the Commission to deny access to these records.
RESPONSE
My duty under A.C.A. § 25-19-105(c)(3)(b) is to determine whether the custodian's decision is consistent with the FOIA. A.C.A. §25-19-105(c)(3)(B)(i) (Supp. 2005). In this regard, it is difficult to perform my duty without knowing the particular basis or part of the test upon which the custodian hinges his denial of access. I can state, however, that to the extent the decision is based upon the lack of a "compelling public interest" in disclosure under the test for the release of "employee evaluation or job performance records," in my opinion the custodian's decision is in all likelihood inconsistent with the FOIA.
The types of records you have requested presumably fall within the classification of "employee evaluation or job performance records" under the FOIA. I have previously opined that documents such as written reprimands and letters of caution, documents supporting a recommendation for suspension or dismissal, and letters related to promotions and demotions are "employee evaluations or job performance records." See Op. Att'y. Gen.2005-094, citing Ops. Att'y Gen. Nos. 2001-203; 1999-147; 1993-105, 1993-055, 1992-231, 1992-191, 1991-324, and 1991-303. As indicated above, such records are subject to inspection and copying under the FOIA "only upon final administrative resolution of any suspension or termination proceeding at which the records formed a basis for the decision to suspend or terminate the employee and if there is a compelling public interest in disclosure." A.C.A. § 25-19-105(c)(1). It has been stated that this exemption:
 . . . promotes candor in a supervisor's evaluation of an employee's performance with a view toward correcting any deficiencies. Watkins and Peltz, The Arkansas Freedom of Information Act (mm Press, 4th ed. 2004) at 196. As stated by Professors Watkins and Peltz:
 "The exemption for evaluation records reflects the public interest in maintaining an effective public employee evaluation system as well as the privacy interests of employees. Without an exemption for such records, supervisory personnel who perform the evaluations may not be candid in assessing employee performance. Also, routine disclosure of the records could undermine one important objective of the evaluation process identification of weaknesses with an eye toward fostering improvement by revealing an employee's deficiencies before he has an opportunity to correct them. The evaluation exemption serves the same purpose as the exemption in Section 25-19-106 of the FOIA that permits a governing body to hold a closed meeting to discuss personnel matters, a provision that dates to the act's passage in 1967."
Op. Att'y. Gen. 2005-074, citing Watkins and Peltz, supra.
The legislature has mandated public access, however, for records that "formed a basis" for an administratively final suspension or termination where there is a compelling public interest in disclosure. These requirements "are designed to ensure that evaluation records are not released prematurely and that disclosure will be made only when the records are relevant to employee performance deficient enough to merit suspension or termination." John Watkins, "Recent Developments Under theArkansas Freedom of Information Act" 1987 Law Notes 59, 61. As I have previously stated, "[t]he question of whether there has been a final administrative resolution of a termination or suspension and the question of whether the requested records formed a basis for that termination or suspension are clearly questions of fact that can be readily determined." Op. Att'y. Gen. 2005-011. The custodian must therefore determine whether these initial prongs of the test for release of employee evaluation or job performance records have been met. The remaining prong is that there be a "compelling public interest" in disclosure. I have previously stated the following with regard to this portion of the test:
 The FOIA at no point defines the phrase `compelling public interest" as used in the final prong of the test for disclosure set forth in A.C.A. § 25-19-105(c)(1). However, Professors Watkins and Peltz, referring to Attorney General Opinions on this issue, offer the following guidelines:
 . . . [I]t seems that the following factors should be considered in determining whether a compelling public interest is present: (1) the nature of the infraction that led to suspension or termination, with particular concern as to whether violations of the public trust or gross incompetence are involved; (2) the existence of a public controversy related to the agency and its employees; and (3) the employee's position within the agency. In short, a general interest in the performance of public employees should not be considered compelling, for that concern is, at least theoretically, always present. However, a link between a given public controversy, an agency associated with the controversy in a specific way, and an employee within the agency who commits a serious breach of public trust should be sufficient to satisfy the "compelling public interest" requirement.
Op. Att'y. Gen. 2004-272 at 5.
Professors Watkins and Peltz also note that: "the status of the employee, or "his rank within the bureaucratic hierarchy," may also be relevant in determining whether a "compelling public interest" exists. Watkins and Peltz, Id. at 206 (noting that "[a]s a practical matter, such an interest is more likely to be present when a high-level employee is involved than when the [records] of `rank-and-file' workers are at issue.")
The existence of a "compelling public interest" in disclosure, however, will depend upon the facts and circumstances attendant to the particular case. Although I have not been apprised of the nature of the infraction that lead to the job action in question, two factors that weigh in favor of the existence of a compelling public interest in this instance are the rank of the employee in question (agency director), and the facts you recite regarding the operation of the Commission, which may indicate a public controversy. As for the first factor (the rank of the employee), I and my predecessors have found a "compelling public interest" in the release of records relating to similarly ranked employees.See e.g., Ops. Att'y. Gen. 2003-132 (housing authority director); 1996-258 (Vice President of ADFA); and 1995-109 (Director of the Arkansas Arts Council). In the last-cited opinion it was concluded that the: "termination memorandum of the Agency Director of the Arkansas Arts Council gave rise to a compelling public interest because the reasons given for his termination "center[ed] directly on his primary administrative and managerial roles." Id. at 2. As for the second factor, the facts you enumerate concerning the firing of the immediately previous director of the Commission and the allegations of racial bias against the Commission may give rise to a public controversy of the sort required to trigger release of "employee evaluation or job performance records." Again, however, the issue is one of fact for the custodian of records to determine.
In my opinion, therefore, to the extent the custodian's decision is based upon the lack of a "compelling public interest" in disclosure, the decision is in all likelihood inconsistent with the FOIA.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:ECW/cyh